UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK JOSUE MARTINEZ-AYERDIS,<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER, et al.,<br>Respondents. | No. 1:26-cv-04380 DAD AC<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner, an immigration detainee proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1. Petitioner argues that his continued detention without an individualized bond hearing violates his due process rights, and he seeks immediate release or a bond hearing. Id. at 1-2. As discussed below, the court recommends that petitioner's request for habeas relief be GRANTED.

## I. Factual Background

Petitioner is a native of Nicaragua who entered the United States without inspection with his mother at age two in December 2005. ECF No. 6-1 at 1-0, 12-13. After petitioner and his mother were apprehended by DHS officials, they were released on their own recognizance. ECF No. 6-1 at 13. His mother was served with a Notice to Appear identifying petitioner as an "alien

present in the United States who has not been admitted or paroled" in December 2005 (ECF No. 6-1 at 8-10), and an in-absentia removal order was entered by an IJ on March 13, 2006 in San Antonio, Texas, directing petitioner's removal to Nicaragua. ECF No. 6-1 at 13, 6-2 at 1-2.[1] Petitioner also has a pending application for Consideration of Deferred Action for Childhood Arrivals ("DACA") with USCIS, which was filed in 2021. ECF No. 6-1 at 20-26.

Over twenty years after the removal order, on April 13, 2026, petitioner was detained by DHS after officers executed a search warrant for stolen goods and electronics in a shared residence. ECF No. 6-1 at 16-17 (Form I-213). Petitioner has remained in ICE custody since that date. Respondents do not allege that petitioner has any past criminal arrests or convictions, including related to the alleged stolen goods at his past residence.

On May 21, 2026, petitioner moved to reopen the March 2006 removal order, alleging that exceptional circumstances applied. ECF No. 6-3 at 1-14. The IJ denied petitioner's motion to reopen on June 17, 2026. ECF No. 6-4 at 2.

II. Procedural History

Petitioner filed the instant habeas petition on June 8, 2026, seeking his immediate release or a bond hearing. ECF No. 1. He asserts his continued confinement without an individualized bond hearing violates his federal due process rights under the Fifth Amendment. Id. at 1-2. On June 11, 2026, the court directed respondents to show cause why the writ should not be granted. ECF No. 4.

Respondents filed an opposition to the petition, arguing that petitioner is subject to an administratively final order of removal and therefore his custody falls within 8 U.S.C. § 1231(a)(6) as "an alien ordered removed who is inadmissible under § 1182." ECF No. 6 at 2 (citing 8 U.S.C. § 1231(a)(6)). Respondents contend "[t]hat provision authorizes continued detention to accomplish removal," as the IJ found petitioner inadmissible under INA

[1] An in-absentia order is administratively final at the end of the 180-day reopen window if no timely motion is filed with the immigration judge. See 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 1241.1(e); Cui v. Garland, 13 F.4th 991, 996 (2021). Here, the order became administratively final because no motion to reopen was filed within 180-days. See 8 U.S.C. § 1231(a)(1)–(2).

§ 212(a)(6)(A)(i)[2] as "[a]n alien presented in the United States within being admitted or paroled." ECF No. 6-2 at 1. Respondents further argue that petitioner lacks access to bond proceedings as a noncitizen detained under 8 U.S.C. § 1231. ECF No. 6 at 3 (citing Johnson v. Guzman-Chavez, 594 U.S. 523, 533–34 (2021)). Finally, respondents argue that although the U.S. Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001) controls, petitioner's current detention is still within the six-month presumptively reasonable period because he entered ICE custody on April 13, 2026 and therefore "burdens do not shift, and his continued custody is proper under § 1231." Id. at 4.

In reply, petitioner argues that respondents have not demonstrated that his continued detention is justified under petitioner's current circumstances. Petitioner reiterates the fact that he has strong family support in the United States, a fixed residence, employment opportunities, no criminal history, and respondents have made no individualized showing that his continued detention is necessary. ECF No. 8 at 2.

## III. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). "District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

---

[2] The corollary United States Code citation is 8 U.S.C. § 1182(a)(6)(A)(i).

IV. Discussion

A. Immigration Detention Framework After a Final Order of Removal

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). Although further detention is authorized if the government fails to remove the noncitizen within those 90 days, the statute "does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "[Section] § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). The second category includes a noncitizen" ordered removed who is inadmissible under § 1182." 8 U.S.C. § 1231(a)(6).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). The court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention." Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

B. Petitioner's Prolonged and Indefinite Detention Violates Due Process

As noted above, on March 13, 2006, an IJ previously found petitioner inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as "[a]n alien presented in the United States watt being admitted or paroled" and ordered petitioner's removal to Nicaragua. ECF No. 6-1 at 13, 6-2 at 1-2. This order is administratively final, and petitioner's recent motion to reopen was denied. ECF No. 6-4 at 2. On this record, it appears undisputed that petitioner is currently subject to discretionary detention pursuant to 8 U.S.C. § 1231(a)(6).

The remaining question before the court is therefore whether petitioner is entitled to relief under Zadvydas. Respondents are correct that to date, petitioner's detention has not exceeded the six-month "presumptively reasonable" period identified by the court. Petitioner entered ICE custody on April 13, 2026, and the six-month presumptive period will not end until October 13, 2026. Courts within the Ninth Circuit have found that the period of post-final removal order detention is cumulative. See, e.g., Pham v. Warden, No. 1:25-CV-01873-DC-AC (HC), 2026 WL 849861, at *5, fn. 1 (E.D. Cal. Mar. 27, 2026) (collecting cases); Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not presumptively reasonable based on aggregate period of confinement); Jaranow v. Bondi, 819 F.Supp.3d 1229, 1236 (W.D. Wash. 2026) (courts in Ninth Circuit have found "six-month period of detention need not be consecutive to reach the limit established in Zadvydas" (collecting cases)). However, the records provided by respondents do not reflect any prior period of detention.

Contrary to respondents' argument that "without that threshold showing, burdens do not shift" (ECF No. 6 at 4), however, the fact that a noncitizen has been in custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas. "Zadvydas did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other

plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal." Clark v. Martinez, 543 U.S. 371, 384 (2005) (citing Zadvydas, 533 U.S. at 697-99) (emphasis in original). Courts including this court have held that the burden shifts to respondents to establish that removal in the near future is reasonably likely if the non-citizen's current period of detention is no longer presumptively reasonable—even if that detention has not yet exceeded six-months. See, e.g., Xiao v. Warden, California City Corr. Ctr., No. 1:26-CV-03871-TLN-SCR, 2026 WL 1707089, at *3 (E.D. Cal. June 12, 2026), report and recommendation adopted sub nom. Jingqi X. v. Warden, California City Corr. Ctr., No. 1:26-CV-03871-TLN-SCR, 2026 WL 1833475 (E.D. Cal. June 25, 2026) (petitioner's three-and-a-half month detention no longer presumptively reasonable where no evidence of danger, flight risk, or process afforded and no evidence removal was reasonably foreseeable); Uzzhina v. Chestnut, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, *3 n. 3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under Zadvydas."); Trinh v. Homan, 466 F.Supp.3d 1077, 1092 (C.D. Cal. 2020) (explaining that "[a]t no point did the Zadvydas Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period");

Here, the court finds that petitioner has overcome the presumption of reasonableness under Zadvydas. First, the record demonstrates that respondents made no effort to effectuate petitioner's final removal order for over two decades. Nor do respondents argue that petitioner is a flight risk or a danger to the community. Despite respondents' aspersions about the circumstances under which petitioner was detained in his shared residence, it is undisputed that petitioner has no criminal history—including any charges related to the alleged stolen goods in the shared home. Zadvydas repudiated the use of "preventative" immigration detention, i.e., detention for the purposes of "protecting the community[,]" where removal is not reasonably foreseeable. See Zadvydas, 533 U.S. at 690-91. Absent such evidence, petitioner's current detention is unmoored from the potential justifications for immigration detention and simply appears to constitute "preventative" immigration detention. ICE detained petitioner after their mandatory detention authority had expired without any meaningful process—such as a neutral

detention hearing—to determine whether such detention was warranted. Zadvydas does not permit the government carte blanche to detain noncitizens whenever and for whatever length of time it takes to get around to removing them. "When, as here, the detention is preventative and potentially indefinite, Zadvydas requires more." Xiao, 2026 WL 1707089, at *4.

Given that petitioner's current detention of four months is no longer presumptively reasonable and that a public safety rationale cannot independently authorize his detention absent strong procedural protections, the burden shifts to respondents to demonstrate the reasonable foreseeability of petitioner's removal. Zadvydas, 533 U.S. at 701. In this case, respondents do not even argue that petitioner's removal is reasonably foreseeable. See ECF No. 6 at 4. Respondents have therefore failed to meet their burden under the burden shifting framework of Zadvydas, and petitioner's continued detention is "unreasonable and no longer authorized." Zadvydas, 533 U.S. at 680. The undersigned recommends that the habeas petition, ECF No. 1, be granted and respondents be ordered to immediately release petitioner.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED, as follows:
    a. Respondents shall IMMEDIATELY RELEASE petitioner ERICK JOSUE MARTINEZ-AYERDIS, A# 099-482-258, from custody, subject to standard conditions of supervision upon release.
    b. At the time of release, respondents must return all of petitioner's documents and possessions.
    c. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.
    d. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decision maker, at which hearing respondents will bear the burden of demonstrating that petitioner is a flight risk or danger to the community and petitioner's eligibility for bond must be considered.

2. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and the return of his documents and possessions.

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE